NEW YORK, N. H. & H. R. CO. v. DAILEY.

(Circuit Court of Appeals, Second Circuit.   May 2, 1910.)

No. 206.

1. MASTER AND SERVANT (§ 97*)—MASTER'S LIABILITY FOR INJURY TO SERVANT —DANGEROUS STRUCTURES.
   If a master provide structures which guard against all accidents which can reasonably be foreseen, he has done his duty in that respect to his employés.
   [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 163; Dec. Dig. § 97.*]

2. MASTER AND SERVANT (§§ 113, 198*)—MASTER'S LIABILITY FOR INJURY TO SERVANT—PLACE TO WORK.
   Plaintiff was employed as an engine hostler at defendant's roundhouse. A dead engine, with no air to operate the brakes, came in and was turned over to him, and a co-employé with another engine kicked it into the roundhouse from the turntable. It was given such speed that plaintiff was afraid it would go through the building, and started to jump off to block the wheels, when he struck the post between the stalls and was injured. There was a clearance between the engine and post of about 11 inches, which was greater than the average in roundhouses. The evidence showed that so far as known no similar accident had ever occurred; it being the duty of the hostler under ordinary circumstances to remain on the engine. Held, that defendant was not chargeable with negligence because the space was not greater, which rendered it liable for the injury, the construction being the usual one and safe for employés under any circumstances to be reasonably anticipated; nor was it liable for the negligent act of the man operating the other engine, which primarily brought about the situation, who was a fellow servant.
   [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 224– 227, 510–513;  Dec. Dig. §§ 113, 198.*]

In Error to the Circuit Court of the United States for the Southern District of New York.

Action by Oliver Dailey against the New York, New Haven & Hartford Railroad Company.   Judgment for plaintiff (167 Fed. 592), and defendant brings error.   Reversed.

Chas. M. Sheafe, Jr. (Frederick J. Moses and Nathaniel S. Corwin, of counsel), for plaintiff in error.

Charles Morschauser (W. E. Hoysradt and Abram J. Rose, of counsel), for defendant in error.

Before COXE, WARD, and NOYES, Circuit Judges.

COXE, Circuit Judge.   The plaintiff was in the employ of the defendant as "hostler" at East Hartford, Conn.   After an engine had come in from a run it was his duty to see that it was supplied with water, coal and sand and placed in a stall at the roundhouse until needed for the next run.   The roundhouse was of the usual construction, built in a semicircle around a circular turntable, which, after the engine was placed upon it, was turned until the track on the turntable

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

registered with the track leading to the stall in the roundhouse where the engine was to be placed. The stalls were separated by posts which supported the roof and also supported swinging doors. The clearance between the engine and these posts was about 11 inches. The construction in this respect was similar to that of other roundhouses, the clearance varying in different structures from about 4 inches, which is the minimum clearance, to 13 inches, which is the maximum. The plaintiff was an experienced railroad man and for five years prior to the accident had acted as "hostler" in defendant's roundhouse at Hopewell. This roundhouse was similar in construction to the one at East Hartford where the accident happened. The evidence showed that the clearance was insufficient to enable a man to alight from an engine while it was passing through the entrance to the stall before the posts had been passed. Ordinarily the "hostler" has no occasion to alight at this point. His duty is to remain on the engine until it comes to a standstill. It also appeared that such an accident as happened to the plaintiff was unknown among railroad men. The combination of unusual circumstances which led to the accident in question was as follows: The engine came in from the road at about 5 a. m. It had not sufficient steam to move into the roundhouse and there was no air to operate the brakes; in short, the engine was "dead." This condition was reported to one Moriarity, who procured another locomotive and pushed the plaintiff's engine to the sand house, the water station, and, finally, onto the turntable. Subsequently, with still another locomotive, Moriarity backed up against the plaintiff's engine on the turntable and gave it a "kick" for the purpose of sending it into the stall. The plaintiff, fearing lest the engine might run into and, perhaps, through the rear wall of the roundhouse, and being unable to stop its momentum, attempted to alight at the moment the post was being passed, for the purpose of blocking the wheels. He was caught between the post and the tender and received the injuries complained of.

At the close of the testimony the defendant moved the court to dismiss the complaint and direct a verdict for the defendant on the following grounds: First, that no negligence had been proven against the defendant in the construction and maintenance of the roundhouse; second, that if the proximate cause of the accident was the action of Moriarity, it was the act of a fellow servant, for which the defendant is not responsible; third, that the plaintiff had full knowledge of the situation on the night of the accident and assumed the risk of the alleged defects in construction. This motion was denied and the defendant excepted.

It is clear that the accident was caused, primarily, by Moriarity, who was a fellow servant, in giving the "dead" engine upon which the plaintiff was stationed too vigorous a "kick" when it was helpless upon the turntable. Whether the plaintiff's action contributed to the accident it is unnecessary to decide. In order to sustain the verdict it must appear that the defendant was guilty of fault. If not guilty of fault, there can be no verdict against it. The only negligence alleged is in the construction of the roundhouse in question, which is said to be faulty for the reason that there was not a wider space between the en-

gines and the posts at the entrance to the stalls. It is shown that the construction in this regard was the usual one and that the spaces left were much wider than in the average roundhouse. Was the defendant bound to guard against the wholly abnormal and unusual combination of circumstances which caused the plaintiff's injuries? Is a master required to anticipate an accident which, so far as the evidence here is concerned, had never happened before and may never happen again? We think not. The authorities cited by the plaintiff are not, in our judgment, germane. They all relate to cases where the dangerous structures were allowed to remain where employés in the discharge of their duties might come in contact with them. For instance, it has frequently been held that a brakeman who is required to be on the roof of a car while passing a low bridge may recover, if no warning is given of the proximity of the dangerous structure. So, too, where telegraph poles or other structures are placed so near the moving trains that an employé in the discharge of his duty may come in contact with them. In fact, this court, in the case of the Boston & Maine Railway Company v. John N. Gokey, 149 Fed. 42, 79 C. C. A. 64, held that an employé who was required, while in the discharge of his duty, to be upon a moving train while passing a switch target which was placed so near the track as to strike him while on the ladder at the side of the car, might maintain an action against the railroad.

These cases rest upon the proposition that if it can be foreseen by the exercise of ordinary prudence that an employé may be injured by the machinery furnished for his use, it is the duty of the employer to minimize the danger as far as possible.

In the case at bar, under ordinary circumstances, the "hostler" is required to remain at his post on the engine until it is finally placed in the stall in the roundhouse. Ordinarily the engines are operated by their own steam and are stopped by their own brakes. Here the concurrence of the absence of steam and of insufficient air to operate the brakes made it necessary to call in the services of another engine. The defendant was not, however, required to guard against such an extraordinary combination of circumstances as produced the injury in question. The opening into the stalls of the roundhouse between the posts was ample for all ordinary conditions and, having provided such a structure, the defendant cannot be held responsible because the plaintiff saw fit to attempt to alight at the very moment when the engine was passing the posts. If the contention of the plaintiff be sustained by the courts, it necessarily follows that the owner of a stable who has provided ample room for his horses and carriages to enter can be held liable if his coachman loses control of the horses and receives injuries in an attempt to descend from the vehicle at the moment it is passing through the door. It will hardly be contended that the owner of a garage is required to provide an entrance wide enough not only to admit the motor car with perfect safety, but also sufficiently ample to enable the chauffeur, should the machine become unmanageable, to leap out while passing through the entrance.

We know of no rule holding a master to such extreme care. If he provides structures which guard against all accidents which can rea-

sonably be foreseen, he has done his duty to those whom he employs. We think the court should have granted the motion for the direction of a verdict for the defendant.

Judgment reversed.