## LAURA STONE v. CHICAGO & NORTH WESTERN RAILWAY COMPANY.[1]

December 21, 1928.

No. 26,970.

See note in 47 L.R.A.(N.S.) 38; 48 L.R.A.(N.S.) 987; L. R. A. 1915C, 47; 18 R. C. L. 848; 3 R. C. L. Supp. 860; 4 R. C. L. Supp. 1215.

*Tautges, Wilder & McDonald,* for appellant.

*Thomas Mohn, Horace W. Mohn, Richard L. Kennedy, William T. Faricy* and *P. J. McGough,* for respondent.

[1]Reported in 222 N. W. 641.

TAYLOR, C.

Plaintiff, as administratrix of the estate of her husband, George H. Stone, brought this action under the federal employers liability act to recover damages for his death, and obtained a verdict. Judgment was rendered for defendant notwithstanding the verdict, and she appealed therefrom.

Mr. Stone was foreman of a switching crew in defendant's yards at Kenosha, Wisconsin, and was engaged in interstate commerce at the time of the accident which caused his death. His crew consisted of an engineer, a fireman, a head brakeman, a rear brakeman or field man, and himself.

The American Brass Company has an extensive plant at Kenosha which includes a large building more than 400 feet in length north and south known as the wire mill. Large doors 20 feet in height are provided at the north end of the building for the passage of railway cars in and out. A railroad track enters the building from the north on a curve and extends along the west wall to the south end of the building. The track is owned by the brass company but extends northerly from the building to a switch by which it is connected with the tracks of defendant. A floor or loading platform extends along the east side of the track at the same height as the floor of cars standing on the track. This platform is supported on the side along the track by a concrete wall which curves at its north end to conform to the curve in the track. There is a space of about 10 feet between the north end of this wall and platform and the north wall of the building. At the north end of the platform, six steps set in concrete lead from the track level to the platform. The ends of the steps toward the track are flush with the face of the concrete wall. A photograph in evidence shows the situation clearly. At the time of the accident two heavy iron frames between two and three feet square used for carrying metal stood on the platform about a foot south of the top step. One of these frames was placed on the top of the other, and they projected slightly beyond the edge of the platform toward the track. The distance which they projected was estimated by one witness at two or three inches, by others at less than that. Beyond these frames there

were several reels of cable standing along the edge of the platform. These frames and reels had been in the same position for more than two weeks prior to the accident.

Mr. Stone's crew was the only crew which took cars in or out of this building. They made two trips daily for that purpose—the first to take out loaded cars, the second to place cars at the platform to be loaded. The cars were always pushed into the building by an engine behind them moving backward so that the engineer would be on the east or platform side where he could receive signals. On each side of a boxcar there is an iron ladder extending to the top at one end and an iron stirrup hung below the sill with a single grabiron above it at the other end. The ladder and stirrup on one side are respectively at diagonally opposite corners from the ladder and stirrup on the other side so that they are always in the same relative position whichever end of the car may be in front. When a car moved south into the building there was always a stirrup on the left-hand or platform side at the front end and a ladder on the same side at the rear end.

Mr. Stone and his brakemen rode on the cars when taking them into the building. Where two rode on the side of the same car, the one in the stirrup always dropped off at the foot of the steps leading to the platform; the one on the ladder usually remained to spot the car. He could ascend to the top of the car or high enough on the ladder to clear the platform and objects upon it.

At the time of the accident they were moving a string of six cars into the building. The leading car was a 50-foot car of the usual width. The clearance between the ends of the car and the platform was about two feet, but owing to the curve in the track the clearance between the center of the car and the curved part of the platform was only about nine inches and between the door sill on the car and the platform only about seven inches. Mr. Stone rode in the stirrup of this car and brakeman Beck on the ladder. Instead of dropping off the car at the foot of the steps as usual, Mr. Stone passed that point and dropped off when opposite the top step. He put his hand on the top step and made a movement to go backward, but was

caught by the doorsill on the car and was rolled and crushed between the car and the wall.

Plaintiff claims that defendant was negligent in permitting the iron frames previously mentioned to remain on the platform projecting over its edge, and that the deceased was caught by these frames and brushed off the side of the car. The evidence does not bear out this claim. Brakeman Beck was facing the deceased and from his position on the ladder saw all that occurred. He signaled to the engineer for an emergency stop when he saw the deceased drop down from the stirrup. He was plaintiff's principal witness and gave the details of the accident. Later he was called by defendant to show that the deceased knew of the obstructions on the platform. Beck's testimony is that the deceased did not come in contact with the frames at any time, and there is no evidence that he did come in contact with them. So far as appears he dropped off the car in the usual manner, but not until he had passed the usual place at the foot of the steps. As the evidence will not warrant a finding that the frames caused the deceased to fall from the car, we have no need to determine whether defendant was chargeable with notice of their position on the platform, or with negligence in permitting them to remain in the position in which the brass company had placed them.

Why the deceased acted in the manner he did is left in the realm of conjecture. Whether he inadvertently passed the place for alighting and, on realizing that he had passed it, dropped off on the impulse of the moment, or whether he had some reason for passing the usual place and for dropping off later, no one knows and we can only guess.

Plaintiff charged in her complaint that defendant negligently failed to provide and maintain a safe and sufficient clearance between the track and the platform but does not urge that claim here. It would clearly be untenable. Defendant did not construct either track or platform and did not own or control either. The matter of constructing them and of locating them properly in relation to each other was an engineering problem. They were arranged for

the purpose of bringing cars into a convenient position to be loaded from the platform. The plan did not intend a space for employes between cars and platform, and there was no need for employes to be in the space between them. Furthermore, the deceased having taken cars in and out of the building over this track daily for more than eight months was thoroughly familiar with the situation and must be deemed to have assumed the risk of the dangers necessarily incident to the doing of that work. Tuttle v. D. G. H. & M. Ry. 122 U. S. 189, 7 S. Ct. 1166, 30 L. ed. 1114; Toledo, St. L. & W. R. Co. v. Allen, 276 U. S. 165, 48 S. Ct. 215, 72 L. ed. 267; C. N. Ry. Co. v. Walker (C. C. A.) 172 F. 346, 24 L.R.A.(N.S.) 1020; B. & O. R. Co. v. Newell (C. C. A.) 196 F. 866; Hogan v. N. Y. C. & H. R. R. Co. (C. C. A.) 223 F. 890; McCann v. M. & St. L. R. Co. 159 Minn. 70, 198 N. W. 300, and cases cited. The case is governed by the federal act and by the principles of the common law as established and applied in the federal courts, and as explained in the cases cited the defendant was not responsible for the happening of the unfortunate accident which caused the death of Mr. Stone.

Judgment affirmed.