## JENNIE E. DONAHUE v. CHICAGO, MILWAUKEE, ST. PAUL & PACIFIC RAILROAD COMPANY.[1]

January 10, 1930.

No. 27,441.

[1]Reported in 228 N. W. 556.

*F. W. Root, C. O. Newcomb, A. C. Erdall* and *W. H. & H. W. Gillitt,* for appellant.

*Humphrey Barton,* for respondent.

TAYLOR, C.

Plaintiff as special administratrix of the estate of her deceased husband, Thomas C. Donahue, brought this action under the federal employers liability act to recover damages for his death, alleged to have been caused by the negligence of defendant, and obtained a verdict. Defendant moved for judgment notwithstanding the verdict without asking for a new trial. The motion was denied and judgment entered. Defendant appealed therefrom.

The railroad tracks mentioned in the record are referred to as running east and west. Defendant's freight house in the city of St. Paul is located on the north bank of the Mississippi river. The depot and the passenger tracks of the Union Depot Company are located on land adjoining defendant's land on the north. Defendant has an extensive yard slightly less than three miles east of its freight house in which freight trains are made up; and has two tracks known as main line freight tracks which run from this yard to the Minnesota Transfer and the city of Minneapolis and which pass between defendant's freight house and the passenger tracks which enter the union depot. The north track is used for west bound freight, the south for east bound freight. Trains made up in the yard and destined for the Minnesota Transfer or the city of Minneapolis were known as transfer trains and were run to those points over the west bound freight track without stopping at the union depot. The transfer trains were made up by switch crews and were then run to their destination by what were termed transfer crews. This work was carried on both day and night, the crews working in eight-hour shifts. Defendant had another track extending from the east end of the freight house to the yard over

which it ran an engine and coach at 7:30 a. m. and 3:30 and 11:30 p. m. to carry employes from the freight house to the yard. It made no provision for transporting employes who went to or from the yard at other hours.

Mr. Donahue had been in the employ of defendant for many years; and at the time of the accident he was and for a considerable time prior thereto had been a conductor in charge of a transfer crew, consisting of an engineer, fireman, two brakemen and himself. He had taken transfer trains from the yard over the west bound freight track to the Minnesota Transfer or to Minneapolis daily during the time he had been the conductor of such transfer crew and was perfectly familiar with the situation at the union depot and elsewhere along the line. The tracks of the Chicago Great Western Railroad Company intersect the tracks of defendant less than 700 feet west of the depot. All transfer trains stopped at this crossing and were not allowed to proceed until they received a signal giving them the right of way.

Donahue and his crew began work at 6:30 p. m. and finished at 2:30 a. m. unless there was occasion to work over time. Defendant made no provision for taking crews working this shift either to or from the yard. A street car ran within about three-fourths of a mile of the yard, and the men sometimes rode on the street car and walked the distance between the end of the street car line and the yard. If a transfer train came along at the right time they sometimes rode on that. O'Rourke, one of Donahue's brakemen, had an automobile in which he drove to and from the yard except when snow prevented; and when they quit work Donahue rode home with him. Shortly before the day of the accident there had been such a heavy fall of snow that O'Rourke did not use his automobile. On the evening of December 21, 1927, the crew began work at the usual time and finished about 4:30 in the morning of December 22, having worked about two hours over time. When ready to leave they saw a transfer train drawn by two engines about to start, and Donahue, O'Rourke and two others got on the second engine. There was a rule forbidding employes, other than those engaged in operating the train, from riding on engines; but the engineers did not enforce this

rule against employes who were leaving the yard to go home. The snow had been removed from the freight line tracks by snow plows or flangers which left it in ridges along the sides of the tracks. It had been cleared away from the vicinity of switches but remained in ridges along other parts of the tracks. So far as appears there was no occasion for employes to work on or about the tracks except at the switches; and for many years snow had been removed from the tracks in the same manner and left in a similar condition.

The cab of the engine was enclosed by storm curtains at the sides and rear. When they reached the depot and while the train was going between four and eight miles an hour, Donahue passed out through the curtains to get off. A few moments later O'Rourke also went through the curtains to get off. When on the steps of the engine he saw Donahue holding on to the end of the footboard at the rear of the tender and dragging between the ridge of snow and the track. He shouted to stop the train and jumped off; but before he could get a grip on Donahue, Donahue lost his hold on the footboard and was caught by the wheels of the following car and injured so that he died at the hospital six or seven hours later. He gave no account of how the accident happened and apparently did not realize what had happened. No one saw him after he passed through the curtains until O'Rourke saw him holding on to the footboard.

The court instructed the jury that Donahue was an employe of defendant and engaged in interstate commerce at the time of the accident. Defendant challenges this instruction. By resting its case solely on its motion for judgment defendant waived all errors either in the charge or rulings which would be ground only for a new trial. 3 Dunnell, Minn. Dig. (2 ed.) § 5085, and cases cited. Defendant contends however that the conceded facts show as a matter of law that the relation of master and servant did not exist between Mr. Donahue and the defendant at the time of the accident, and cites federal cases tending to sustain this contention.

If the record shows as a matter of law that the relation of master and servant did not exist at the time of the accident, plaintiff had no cause of action and could not recover. But we find it unneces-

sary to determine that question, for we are unable to escape the conclusion that Mr. Donahue assumed the risk incident to alighting at the place and under the circumstances in which he attempted to do so.

Mr. Donahue had taken transfer trains over this same track daily for a long period and was perfectly familiar with the situation and conditions. He had no duties to perform on this train nor at the depot. His duties had been completed before he left the yard. He was riding on this train for his own convenience. He knew that it would not stop at the depot but would stop at the Great Western crossing less than 700 feet beyond the depot, where he could alight in perfect safety. Solely for his own convenience and merely to avoid walking back to the street passing the west side of the depot he got off the train while it was in motion and where he knew that there was a ridge of snow at the side of the track. Conceding that he was in the course of his employment while returning from the yard on this train and that defendant was negligent in failing to remove the ridge of snow at the side of the track, yet the undisputed facts compel the conclusion that he assumed the risk incident to getting off the train at the place where, simply for his own convenience, he chose to alight. McCann v. M. & St. L. R. Co. 159 Minn. 70, 198 N. W. 300; Stone v. C. & N. W. Ry. Co. 176 Minn. 104, 222 N. W. 641, and cases cited in those cases.

Most of the cases involving the question of assumption of risk are cases in which the employe was engaged in performing duties which his employment required him to perform. But the rule applies with greater force where an employe with no duties to perform needlessly exposes himself to a known danger; or where he has the choice of a safe way or of a dangerous way to leave the employer's premises and he voluntarily selects the dangerous one. 39 C. J. 768, §§ 967-968, and cases there cited.

The judgment is reversed and judgment directed for defendant.