JOHN WICKMAN v. M. AIMEE POLIQUIN AND ANOTHER.[1]

November 13, 1931.

No. 28,547.

Nelson & Cedergren and Karon & Raihill, for appellant.
Baldwin, Baldwin, Holmes & Mayall, for respondents.

LORING, J.

In a common law action to recover for personal injuries, the plaintiff had a verdict against his employers. The trial court granted judgment notwithstanding the verdict, and the plaintiff appealed.

[1]Reported in 238 N. W. 888.

Plaintiff's eye was injured by a flying fragment of stone on the 27th day of August, 1930, while he was working for the defendants upon a scow at the Portage ship canal near Houghton, Michigan. The defendants were engaged in unloading rocks from the scow to a breakwater, which was being constructed at that port. The plaintiff had been working for the defendants upon this scow for about a month, in the course of which several cargoes of rock had been loaded and unloaded. Some of these cargoes had been brought from remote places upon the lake, and others were taken from an old breakwater which was being replaced by the one under construction. The cargoes of rock were carried in a hold or open deck amidships of the scow. This hold was 76 feet long and as wide as the scow (36 feet). The entire length of the scow was 151 feet and forward and aft of the open cargo hold there were derricks and deck structures for the housing of the crew. The rocks were loaded and unloaded by means of two steam derricks. At the time plaintiff was injured, the derrick on the after deck was the one in operation. Rocks weighing over five tons were placed in a sling, while those weighing less than that were handled by a contrivance called a grappler. The opening and closing of this grappler was controlled from the derrick, whereas the slings had to be placed around the rocks and removed by hand. Smaller rocks were allowed to drop into the cribbing of the breakwater, while the larger ones were placed on top of the others in an orderly manner so as to form a smooth crest for the waves to beat upon. The record is not clear as to how many times the plaintiff had assisted in or observed the loading and unloading of the cargoes, but it is clear that he had been working upon the scow while it was engaged in the handling of rocks and had seen particles of rock thrown from the rocks dropped by the derrick on a number of occasions during the month of August.

Upon the morning of the day in question large rocks had been removed from the scow by the use of slings, and about 11 or 11:30 o'clock the defendants had started to unload the smaller rocks by means of the grappler. The defendant Poliquin, who was operat-

ing the derrick, would swing these smaller rocks out over the break-
water and drop them in the desired location by tripping the grap-
pler. He dropped them from a height of from three to five or six
feet as a usual thing, and the contact of the falling rocks upon
those already in the breakwater would cause small particles of rock
to fly sometimes as far as 50 or 60 feet. While rocks were being
handled by the grappler there was no occasion for any member of
the crew to be either in the cargo hold or near where the rocks were
being dropped on the breakwater. The scow was moved back and
forth along the breakwater by means of a steam winch and a cable.
The scow was held close to the breakwater by breast lines, and when
it was to be moved along the breakwater it was necessary for em-
ployes to be at the bitts or snubbing-posts to assist in the handling
of the ropes. When defendants desired to move the scow they
called the employes to the ropes by means of a steam whistle. At
other times when the grappler was being used the employes might
be at such places upon the scow as they found convenient, except
that they were not permitted to be in the cargo hold.

Along the sides of the cargo hold and at each end there was a
heavy plank wall or bulwark. This wall was stated by various wit-
nesses to be from three and a half to six feet high. All along the
side towards the breakwater it was removed for the purpose of un-
loading, except about 16 feet at the front end of the cargo hold
which extended about eight feet forward of the hold and within
two to four feet of the forward snubbing-posts. This wall would
have afforded perfect protection against flying particles of rock
from the breakwater.

During the morning of the 27th and after defendants had ceased
using the slings, the plaintiff had been engaged in splicing cable on
the forward deck in the vicinity of this wall. He finished his task
in connection with this cable before lunch and after lunch was not
occupied with any work. The smooth round top of the forward
snubbing-post furnished a comfortable seat, and plaintiff sat there
smoking and watching the defendant Poliquin operate the rear
derrick and the grappler. In that position he was about two feet

forward of the wall and exposed to flying particles of rock from the breakwater if they should be cast so far. After plaintiff had been watching the unloading for 10 or 15 minutes after lunch, Poliquin picked up two rocks in the grappler and swung them over the breakwater. One of the rocks appeared to drop out before the other, and the grappler rose to a height of perhaps 10 feet with the remaining rock, which weighed about a ton. It was dropped from this height, and when it struck the rocks in the breakwater a particle of rock was thrown about 60 feet and struck the plaintiff's right eye, necessitating its removal.

It is the contention of the plaintiff that the defendants were guilty of negligence in not lowering the rock closer to those in the breakwater before tripping the grappler, and also that they were negligent in not warning the plaintiff of the danger from the flying particles. On the part of the defendants it is contended that the flying of this particle of rock such a distance was a casual circumstance, and occurred so infrequently that a master of ordinary prudence would not deem a warning necessary and whatever risk there was from these flying particles was assumed by the plaintiff.

While the doctrine of assumption of risk is not favored and is to be applied cautiously (4 Dunnell, Minn. Dig. [2 ed. & Supp.] § 5967) we nevertheless must apply it in a common law action where the facts clearly compel its application. In the case before us it was not necessary for the plaintiff to expose himself to the hazards of flying particles of rock. He was sitting on the bitt for his own convenience while watching the operation of the derrick. Within two to five feet of him there was a barrier behind which he could have sat fully protected from flying rock; or if he had turned his back toward the place where the rocks were allowed to fall on the breakwater it would have been a sufficient precaution to protect him, because his own evidence shows that the flying particles of rock did not travel with sufficient force to injure a man unless they hit him in the eye. The plaintiff thus exposed himself voluntarily to whatever hazards there were in connection with the flying particles of rock; and, while he had been working upon the scow for only a month and had seen very little rock handled with the

grappler, he knew that when rocks were dropped upon other rocks, small particles were thrown in various directions. This happened when the sling was used as well as the grappler and was the result of the simple operation of the forces of nature. A man of his age and experience would not require an extended experience or opportunity to observe the operation of these forces. The particles of rock made a whistling or singing sound in their progress through the air so that he could not observe the process for many minutes without realizing fully what was going on. He admits that he had seen the particles fly upon many previous occasions but not so far. Any man of ordinary intelligence must know that if one of the particles hit him in the eye injury would follow, and that a rock dropped from a greater height would naturally cause the particles to fly farther.

The doctrine of assumption of the risk applies with greater force where an employe with no duties to perform needlessly exposes himself to a known danger. Donahue v. C. M. St. P. & P. R. Co. 179 Minn. 138, 142, 228 N. W. 556. Here the plaintiff was not required to be on the snubbing-post. The most that can be said is that he was to be within convenient call, and there were many places of perfect safety where he could have placed himself but not perhaps have so well satisfied his curiosity about the handling of the grappler.

We are of the opinion that the evidence here showed that the plaintiff assumed the risk as a matter of law. Chesapeake & O. Ry. Co. v. Kuhn, 284 U. S. —, 52 S. Ct. 45, 76 L. ed. 118. The trial court did not decide the case upon that ground but ordered judgment for the defendants for lack of evidence of negligence upon their part. We do not need to discuss that question.

The order appealed from is affirmed.

DIBELL, J. (concurring).

I do not agree that there was an assumption of risk as a matter of law. With considerable hesitation I concur in affirming the judgment notwithstanding upon the ground that negligence of the defendants was not proved.

OLSEN, J. (concurring).

I agree with Justice Dibell that the question of assumption of risk was a question of fact and that judgment for defendants should not have been granted on that ground. The evidence does not show that plaintiff understood and appreciated the risk, nor does it show as a matter of law that he should have appreciated the risk. I concur in the result on the ground, given by the trial court, that there was not sufficient evidence to show negligence on the part of the defendants.

WILSON, C. J. (concurring).

I concur and also am of the opinion that no negligence is shown.