# O. S. BURHO v. MINNEAPOLIS & ST. LOUIS RAILROAD COMPANY.[1]

*May 9, 1913.*

Nos. 17,912—(74).

**Automatic coupler — Federal statute — question for jury.**

1. In an action against a railroad engaged in interstate commerce to recover for injuries to plaintiff, its employee, while attempting to open a knuckle of an automatic coupler on a car then used in interstate commerce, it is *held* that under the evidence it was for the jury, and not the court, to determine whether or not the coupler was such as is required by the Federal Safety Appliance Act.

**Same.**

2. A coupler which fails to work, when an honest and reasonable effort is made to operate it under circumstances and in the manner it is designed to be operated, does not comply with the requirements of the act referred to.

**Failure to comply with act — contributory negligence.**

3. The trial court held that the sole ground of recovery rested upon the alleged failure of defendant to comply with the act mentioned. It therefore follows that the defendant was not entitled to avail itself of plaintiff's contributory negligence for any purpose, under the proviso of section 3 of the Federal Employer's Liability Act, approved April 22, 1908.

**Question for jury.**

4. The evidence made the question one of fact for the jury whether or not plaintiff was engaged in making a coupling when he was injured, so that it may be said that the defective coupler was the proximate cause of the injury.

**Charge to jury.**

5. Alleged errors in the instructions of the court examined and *held* not well founded. An unenforced rule of the defendant does not protect it against the consequences of its failure to comply with the mandatory requirements of the act referred to.

[1] Reported in 141 N. W. 300.

Note.—On the duty and liability under Federal and state railway safety-appliance acts, see notes in 20 L.R.A.(N.S.) 473, and 41 L.R.A.(N.S.) 49.

**Misconduct of jurors.**

6. No prejudicial misconduct available to defendant is found in the fact that two jurors saw other couplers, which were permitted to remain in an anteroom to the courtroom during the trial; the court and the attorneys for defendant knowing of their presence and possibility of being observed by jurors.

**Damages not excessive.**

7. The damages, though large, *held* not so excessive that this court ought to interfere.

Action in the district court for Ramsey county to recover $40,000 for personal injury. The facts and the substance of the complaint and answer are stated in the opinion. The reply denied that the accident was due to plaintiff's failure to exercise proper care for his own safety or that plaintiff assumed the danger of such an accident. The case was tried before Dickson, J., who denied defendant's motion for a directed verdict, and a jury which returned a verdict of $24,750 in favor of plaintiff. From an order denying defendant's motion for judgment notwithstanding the verdict or for a new trial, it appealed. Affirmed.

*W. H. Bremner, F. M. Miner, Eugene Bryan* and *George W. Seevers,* for appellant.

*W. R. Duxbury* and *Theodore Hollister,* for respondent.

HOLT, J.

Action to recover damages for personal injuries received through the negligence of the defendant. The verdict was for plaintiff, and defendant appeals from an order denying its motion for judgment in its favor, or, in case of a denial thereof, for a new trial.

Plaintiff alleged that on April 14, 1911, he as brakeman, was in the employ of the defendant, a railway company engaged in interstate commerce. On that day he was injured on the defendant's tracks at Waseca, Minnesota, while at work upon one of its interstate commerce freight trains under these alleged circumstances, in brief: As plaintiff was so working, it became his duty to couple a "dropped in" car to the said freight train on defendant's "passing" track at Waseca, and in so doing he rode on the ladder of the car

to regulate the speed, if necessary, and to set the coupling, so that the car would couple onto the train on contact with it. Under the law the defendant was required to furnish the car with a safe coupling apparatus, that could be operated by a lever from the position on the ladder in which plaintiff was in. It is alleged that the coupling on the car in question was out of order and could not be operated by the lever; hence it was necessary for plaintiff to resort to the customary way then in use on defendant's line to make the coupling, namely, to descend from the ladder to the ground, walk in front of the moving car, and open the knuckle with his hands, so that, by the impact with the standing train, the coupling would be made. When in the act of so opening the knuckle, plaintiff avers that he stumbled and fell, due to defendant's negligence in depositing a heap of cinders containing large clinkers on the track, and that, as he fell, the wheels of the moving car caught him, inflicting injuries which resulted in the loss of the left leg eight inches below the knee, and all that part of the right foot in front of the heel. The alleged negligence, in short, is failure to have such couplers as the law requires, and failure to maintain the track in a reasonably safe condition.

The answer admitted the character of the defendant's business, and the plaintiff's employment upon this train, then engaged in interstate traffic, also that, while so working, he received some injuries, but denied that they were occasioned by any negligence on its part, and set up contributory negligence and assumption of risk in defense.

The evidence, in addition to these admissions, tended to show these facts: At Waseca another railroad crosses the defendant's, and connecting tracks are laid, so that cars may be transferred from one line to the other. When the freight train in question arrived at that place on this trip, it pulled in on the defendant's passing track; the locomotive was uncoupled; the train crew proceeded to do some switching with it, and also got from the other railway line a car to be placed in the train which plaintiff was assisting in transporting. This car was to be coupled to the north end of the train left on the passing track. In that operation the locomotive proceeded with this car to a position on the main line some distance north of the switch for the passing track; then the locomotive started south, the

car, to be coupled to the standing train, being at the north end or rear thereof. When the locomotive had obtained sufficient speed to make what is termed a "flying switch," the car in question was uncoupled, and as soon as the locomotive passed by the switch for the passing track that switch was thrown, so that, as the uncoupled car came along, propelled by the momentum given while it was attached to the locomotive, it went in on the passing track. The object was to give the car such momentum that it would be carried to the standing train and couple thereto by impact. The operation is also termed "dropping" a car in.

Plaintiff's duty was to take the car when it passed the switch, protect the intervening street crossings, control, by the brake, the force of the impact, and see that the coupling was made. As the car proceeded south, plaintiff caught on at the southwest corner, by placing one foot in the stirrup projecting down from the sill at the side of the car near that corner, the other foot on the journal of the trucks, and holding on to the grabiron on the side of the car. As he was thus riding, he claims that he found the coupling knuckle closed, and, since the car would not couple to the standing train in that condition, it was his duty to open it. He made several unsuccessful attempts to open it with the coupling lever, which he could manipulate from his position. As there was no danger that the impact would be too forceful, plaintiff jumped off the car, which was moving slowly, and tried to jerk the lever while walking beside the car, but without success. He then went in front thereof to open the knuckle with his hands. He maintains that, although a rule of the defendant forbids going between moving cars in making a coupling, the custom and practice is for brakemen to go in front of or between cars to make the coupling when for any reason the automatic couplers fail to work. When he was so walking in front of the moving car and attempting to open the coupler knuckle, he fell over some obstructions on the track, he claims, and received his serious injuries. There is also other testimony to the effect that the coupler failed to respond to the lever and had to be opened by hand. The defendant's evidence was to the effect that the coupler was of approved make and at the time in good working order.

The court held that no negligence was shown as to the condition of the track, but submitted to the jury whether defendant failed to maintain such a coupler as the act of Congress requires; if it so failed, was the plaintiff engaged in his duty of making a coupling, so that the proximate cause of his injuries can be said to be a defective coupler? The jury was also instructed that, if the failure of the coupler to work was not the occasion for plaintiff's presence in front of the moving car, defendant was entitled to a verdict. Plaintiff's contributory negligence was not submitted to the jury for any purpose.

The defendant was not entitled to a directed verdict. The court, having held that the condition the track was in with reference to cinders or clinkers thereon did not show negligence, left no other ground for liability except the alleged failure to comply with the act of Congress in respect to the coupler. That act applies to this case. In so far as the Supreme Court of the United States has spoken on the subject, we draw the conclusion that this statute imposes an absolute duty on a railroad engaged in interstate commerce to have couplers that will at all times, when operated in an ordinary and reasonable manner, work without necessitating employees going in between the cars. Johnson v. Southern Pacific Co. 196 U. S. 1, 25 Sup. Ct. 158, 49 L. ed. 363; Chicago, B. & Q. Ry. Co. v. United States, 220 U. S. 559, 31 Sup. Ct. 612, 55 L. ed. 582; Delk v. St. Louis & San Francisco Ry. Co. 220 U. S. 580, 31 Sup. Ct. 617, 55 L. ed. 590; Johnson v. Great Northern Ry. Co. 178 Fed. 643, 102 C. C. A. 89; Nichols v. Chesapeake & O. Ry. Co. 195 Fed. 913, 115 C. C. A. 601. To say that the law has been complied with when the coupler can be made to work only after extraordinary efforts, or sporadically, or by opening the knuckle thereof with the hand, would give very little protection and relief to employees. If a coupler fails to work, when an honest and reasonable effort is made to operate it, under circumstances and in the manner it is designed to be operated, we conclude the law is not complied with.

The defendant complains, because the court did not permit the jury to consider the contributory negligence of the plaintiff in reduction of damages. As above stated, the only negligence which the court left

in the case was based upon noncompliance with the safety appliance act of Congress. As affected by the proviso contained in section 3 of the Federal Employer's Liability Act of 1908, contributory negligence is no more available to a defendant under the situation developed at this trial than is the defense of assumption of risk. The proviso reads: "Provided that no such employee who may be injured or killed shall be held to have been guilty of contributory negligence in any case where the violation by such common carrier of any statute enacted for the safety of employees contributed to the injury or death of such employees." The trial court took the view, and to that extent agreed with the defense, that the defendant was guilty of no actionable negligence unless it was found in the failure to provide a coupler complying with the Federal Safety Appliance Act. Such being the case, we can see no theory upon which plaintiff's negligence could avail either as a defense or in reduction of damages.

The close question in the case is one of fact—whether, in going in front of the car to open the knuckle, the plaintiff could be said to be engaged in making a coupling; or, in other words, was the situation such that plaintiff's duties required him to then go in front of the car to attempt to open the knuckle? It is clear that if the plaintiff, out of idle curiosity, tried to open the knuckle, or for any reason not connected with the duty to make a coupling, it could not be held that the defective coupler was the proximate cause of his misfortune. "Going between moving cars to couple or uncouple is positively forbidden" was a rule of the defendant of which the plaintiff had knowledge, and, as above stated, the court instructed the jury that disobedience of this rule defeated the right to recover, unless the jury found that the plaintiff was then engaged in making a coupling, and, owing to the failure of the coupler to work, it was necessary to go in front of the moving car to open the knuckle. When the accident happened, the car was between 300 and 400 feet from the car to which it was to be coupled. A coupling cannot be made unless the knuckle on one of the two cars to be coupled is open. The object of the crew was to send this car down with force sufficient to couple it by the impact with the train left standing on the passing track. Before the plaintiff left the car, and before it came in contact with the standing train, the knuckle was

to be opened. It would seem not very important at what particular point the work was done, so long as the necessity of its doing arose from the defective coupler.

The contention of defendant that plaintiff could have run ahead of the car and opened the knuckle on the standing car is of no merit. At most, it goes to plaintiff's contributory negligence, which is not defensive matter in these actions. We think there was evidence to sustain the finding of the jury that plaintiff was engaged in making a coupling, at the time he was injured, in the customary way of making it, when a coupler fails to work properly. The case of Chicago, M. & St. P. Ry. Co. v. Voelker, 129 Fed. 522, 65 C. C. A. 226, 70 L. R. A. 264, held that preparation of the coupler, that is, opening the knuckle, is part of the act of making the coupling.

In addition to the contentions already discussed, the defendant earnestly insists that it is entitled to a new trial because of errors in the charge to the jury, misconduct of the jury, and excessive damages.

The court did not charge very fully on the issue whether plaintiff was engaged in making a coupling at the time of his injury. The subject was touched upon, and that correctly. No request to charge was made by the defendant, nor was the court asked to amplify the now-criticised instruction. The part of the charge which is now assailed is this:

"The only claimed right or excuse for the plaintiff's presence upon the track at the time of the accident is an alleged defect in the automatic coupler sufficient to then necessitate his presence on the track for the purpose of preparing it for its destined impact. If such a defect existed at the time, it is sufficient to establish his right to be upon the track at that time, and was the proximate cause of his injury, provided he was then engaged in the line of his duty in making a coupling. But, if no such defect existed, then there was no excuse for his presence on the track at the time, and he was then in violation of law and the rules of the service, and his own negligence and disobedience was the proximate cause of his injury. So that the only question for you to consider in this case, so far as negligence is concerned, is: Did this coupler, that is in issue upon this car, comply with the requirements of the Federal safety act or not? Was it in

such a condition that it could be properly prepared for its destined impact without the necessity of Burho going between the ends of the cars, or was it in such a condition that it could not be so prepared without the necessity of Burho going between the cars? If it was in such a condition that it was necessary for Burho to go in front of the car, as he did, for the purpose of preparing the coupler for its approaching impact and in order to couple onto the other car, then the defendant was guilty of negligence for the injurious consequence of which to Burho it must respond in damages."

We think defendant is not in position to complain of the court's instruction as to the effect of its rule hereinbefore quoted. The court said, in substance, that the rule must be obeyed, unless it was impracticable to perform the work then in hand without violating it. If there was no excuse for his disobedience of this rule, "such disobedience must be considered the proximate cause of his injuries; but, if the coupler was in such condition as of necessity to require him to go in front of the car in order to prepare the knuckles and make the coupling upon which he was then engaged, such condition was a sufficient excuse for his disobedience of the rule."

Testimony was received, and not contradicted, that the custom and practice on defendant's railroad was to do the work just as plaintiff did, whenever the coupler failed to work. It is plain that the promulgation of rules, which are allowed to remain unenforced and dormant until invoked as a shield in a lawsuit, is then to be given scant consideration, and will not serve to protect from liability for failure to comply with a mandatory statute. By this observation, based on the facts of this case, we do not intend to intimate an opinion that a railway company may so frame and enforce rules that the protection intended to be given by the Federal Employer's Liability Act is taken away, especially in view of section 5 thereof.

Misconduct of two jurors is also relied on as ground for a new trial. In an anteroom to the courtroom, where the trial took place, were two couplers which had been used in another lawsuit several weeks previous. It appears that these somewhat resembled the kind of coupler involved here. The defendant's claims attorney at one time during the trial saw these jurors looking at the couplers, and one of them

pushed it with his foot; but this did not incite to action till after verdict. It further appears that the court, as well as the attorneys in charge of the trial for the defendant, knew of the presence of these couplers, exposed to the view of persons going in or out of the court-room. To no one did it occur that prejudice to either litigant might result, if a juror should happen to see the couplers. Admittedly, the couplers were not of the same kind as the coupler here involved, and it is not even made clear that they could be mistaken by any one who heard the trial for the one in controversy. Under this situation, we are clear that the incident cannot fairly be characterized as misconduct of the jurors, even were the defendant in position to claim it, and, further, that no prejudice could possibly have resulted to the defendant.

The verdict is large—$24,750—but the injury was one of the most serious that could befall a person. Great suffering has been endured for a long time, and discomfort, if not acute pain, must always remain with the plaintiff whenever he attempts to move. Until he is sufficiently healed and accustomed to the use of artificial limbs, his only way of locomotion is on his hands and knees, for not enough remains of the right foot to balance himself on crutches. Plaintiff was 25 years old. For the rest of his life he will have to endure the humiliation and exceeding great inconvenience of being severely crippled. He was earning good wages as a brakeman, but knew the work of no vocation wherein he in his present condition is enabled to earn a livelihood. While we should have been better satisfied with a somewhat smaller verdict, we are unable to say that the verdict is so excessive that this court ought to interfere, it having been approved by the trial court. We fail to find reversible error in the record.

Order affirmed.