ETTA RITTENHOUSE, Administratrix of Estate of
H. A. RITTENHOUSE, v. ST. LOUIS-SAN FRAN-
CISCO RAILWAY COMPANY, Appellant.

Division Two, June 11, 1923.

1. **NEGLIGENCE: At Common Law: Switching Crew: Anticipation of
Inspector's Presence.**  Actual knowledge may be imputed to de-
fendant from surrounding facts and circumstances; and if the
switching crew by the exercise of ordinary care could have dis-
covered the presence of the car inspector in the dangerous situa-
tion between the cars they were assembling on a track, in making
up a train, knowledge will be imputed to defendant.  But where
the car, whose coupler, as it drifted in on the assembly track, was
discovered by the foreman of the crew to be defective, in that the
coupling pin had been raised too high, so that it would not auto-
matically couple by impact, had remained on the track less than
a minute before another drifted in and failed to couple; in less
than a minute a third drifted in, and its impact against the second
caused the second and first to come together and crush the in-
spector, who had gone in between them; he had not been seen in
that part of the yard for more than an hour; his usual duties
were in another part of the yard; repairmen did not usually
inspect cars as they were being assembled, but only after notifica-
tion that the train had been made up, and usually repaired
couplers only when called to do so and upon notice to the train-

men, knowledge of the inspector's presence between the cars cannot be imputed, for these facts do not tend to show that the crew failed to exercise ordinary care to discover his presence.

2. ————: Safety Appliance Act: Repairing Car Coupler. The Safety Appliance Act does not embrace an attempt to repair a coupler between stationary cars. Where the car inspector entered in between two stationary cars, which were being assembled upon a switch track in making up a train, apparently for the purpose of repairing a defective coupler thereon, and did so without notice to or knowledge of any of the crew, and within a minute thereafter was crushed when a third car drifted in on the track and struck one of the stationary cars, it cannot be held that the Safety Appliance Act required the coupler to be maintained in such safe condition that the cars would couple by impact, for he was not between the stationary cars for the purpose of coupling them, but to repair the coupler. Especially should such be the ruling where the evidence demonstrates that the inspector, had he looked, would have discovered that the third car, detached from the engine, was drifting in on the track and was sure to hit one of the stationary cars between which he had less than a minute previously entered, and totally fails to show that he would not have entered in between them had there been no defective coupler, and the proximate cause of his death was his failure to warn the switching crew in time to prevent the third car from drifting in on the assembly track.

Appeal from Lawrence Circuit Court.—*Hon. Charles L. Henson,* Judge.

REVERSED.

*Mann & Mann* and *W. F. Evans* for appellant.

(1)   The petition fails to state a cause of action under the humanitarian doctrine in that it does not allege that the defendant knew that deceased was between the cars and in a place of peril, neither does it allege facts sufficient to charge defendant with knowledge of his presence between the cars.   The petition fails to state a cause of action under the humanitarian doctrine because it nowhere alleges that the deceased was in a place of peril from which he was unable to extricate himself, or

that he was oblivious to his danger and that his oblivious-ness was, or by the exercise of ordinary care could have been, apparent to defendant. Obliviousness is a neces-sary and indispensable element in a case under the hu-manitarian doctrine and unless it is alleged in the pe-tition a cause of action under this doctrine is not stated. State ex rel. Railroad v. Reynolds, 233 S. W. 222; Ru-bick v. Sandler, 219 S. W. 406; Haines v. Railroad, 203 S. W. 632; Kamoss v. Railroad, 202 S. W. 436; Pope v. Railroad, 242 Mo. 232, 239; Kinlen v. Railroad, 216 Mo. 145, 164. (2) The evidence fails to show facts sufficient to charge defendant with negligence under the humanitarian doctrine. (3) There was no action-able violation of the Safety Appliance Act and therefore plaintiff was not entitled to have her case submitted to the jury on the allegation of negligence growing out of the alleged violation of this act. To constitute an action-able violation of the Statute, either for damages, or for the penalty, the coupler must not only become inopera-tive, but there must be an attempt "to haul or permit it to be hauled or used." No one was injured when the coupler became inoperative, and while the car was be-ing used. This injury occurred after the coupler became inoperative and after the car had ceased to be hauled or used. The defective coupler was therefore not a cause, either proximate or remote, of this injury. U. S. Comp. Stat. sec. 8621 (Act of April 14, 1910, chap. 160, sec. 4); M'Calmont v. Penn. Ry. Co., 273 Fed. 231; B. & O. Ry. v. United States, 242 Fed. 425. (4) The violation of Section 2 of the Safety Appliance Act is not actionable in this case for the reason that the deceased was not within that class of persons for whose benefit the Safe-ty Appliance Act required that cars be equipped with au-tomatic couplers; his injury was not within the evils against which the provisions for such appliances were directed. The evils against which provisions of the act are directed are those which render it necessary for men to go between the ends of the cars to couple or

uncouple them.   The deceased, according to the evidence, had no duty to perform in coupling or uncoupling cars. Railway Co. v. Conarty, 238 U. S. 243, 59 L. Ed. 1290; Lang v. New York Central, 255 U. S. 455, 65 L. Ed. 729; M'Calmont v. Pennsylvania Co., 273 Fed. 231.

*Sizer & Gardner* for respondent.

(1)   The humanitarian doctrine is not in this case, plaintiff does not declare upon it in her petition, neither does she invoke it in this suit.   The humanitarian doctrine, so called has cut well defined channels and established itself in our law in the nature of exceptions to the general rule that contributory negligence or concurrent negligence bars a recovery.   Tavis v. Bush, 280 Mo. 390; Degonia v. Railroad, 224 Mo. 587.   (2)   Plaintiff sues under the Federal Employer's Liability Act, wherein contributory negligence is not a bar, and alleges two grounds of negligence against defendant: First, statutory negligence, in failing to keep and maintain its couplers so they would couple automatically by impact as required by the Safety Appliance Laws; and, second, common-law negligence in carelessly and negligently shoving a string of cars against and upon the deceased while he was stationed between the cars and attempting to inspect, fix and adjust said couplers, when they knew, or by the exercise of ordinary care could have known, that he was so engaged.   If the testimony authorized the submission of this case to the jury under either one of such grounds of negligence, then the court erred in sustaining defendant's demurrer, and properly corrected its error in granting plaintiff a new trial.   (3)   We will notice first the second ground of negligence.   This allegation charges negligence in general terms, which in the absence of a motion to make more specific, is certainly broad enough to authorize a submission of the case on any negligence shown by the evidence in relation to the handling of the cars in question.   Williams v. Railroad,

175 S. W. 902. In this connection, and on this feature of the case, we call attention to Young v. Railroad, 268 Mo. 625, a case on all-fours with the case at bar. (4) The evidence clearly shows that the deceased was required to work in a place of danger, and that the defendant's employees while handling the cars knew the situation of the deceased and knew of the danger, and they owed him the duty to warn or notify him of the approach of cars. Young v. Lusk, 268 Mo. 639; Moore v. Railroad, 58 Mo. 588; Koerner v. St. Louis Car Co., 209 Mo. 141; Johnson v. Brick & Coal Co., 276 Mo. 50. The deceased had the right to assume that the defendant would not imperil his safety by permitting or causing the car on which he was then working to be struck by other cars and moved without notice or warning to him. Young v. Lusk, 268 Mo. 639; Williams v. Railroad, 175 S. W. 900; Koerner v. St. Louis Car Co., 209 Mo. 141; Peppers v. Plate Glass Co., 165 Mo. App. 556; Anderson v. Railroad, 196 Mo. 440; Porter v. Stock Yards Co., 213 Mo. 372; Kettleheak v. Car & Foundry Co., 171 Mo. App. 541; Hutchinson v. Safety Gate Co., 247 Mo. 94; Erickson v. Railroad, 171 Mo. 659; George v. Railroad, 225 Mo. 405; Charlton v. Railroad, 200 Mo. 413; Crawford v. Stock Yards Co., 215 Mo. 414; Clark v. Iron & Foundry Co., 234 Mo. 436. (5) The other ground of negligence alleged in the petition is a violation of the Safety Appliance Act, in that appellant failed to maintain its couplers so that the same would couple automatically without employees being compelled to go between the cars. The automatic coupler statute violated in this case makes it unlawful for common carriers "to haul or permit to be hauled or used on their lines any car not equipped with couplers coupling automatically by impact, and which can be uncoupled without the necessity of men going between the ends of cars." It is conceded that the coupler in question was defective; but appellant contends, first, that deceased does not come within the class of employees protected by this statute;

and, second, that its violation of the statute was not the proximate cause of his death. If any authorities are needed that the defendant did violate the statute by reason of its coupler being inoperative, we call the court's attention to Railroad v. Popplar, 237 U. S. 369, 59 L. Ed. 1000, affirming 121 Minn. 413, Ann. Cases, 1914D, 389; Railroad v. Parker, 242 U. S. 56, 61 L. Ed. 157; Christy v. Railroad, 195 Mo. App. 232, 62 L. Ed. 924; Moore v. Railroad, 268 Mo. 31. (6) The preparation of the coupler and the impact itself, it has been held, are not isolated acts, but are connected and indivisible parts of the coupling operation, within the purview of the statute. Johnson v. Railroad, 196 U. S. 1, 49 L. Ed. 363; Railroad v. Voelker, 66 C. C. A. 226, 129 Fed. 522, 70 L. R. A. 264; Railroad v. Poole, 175 Ind. 567; Burho v. Railroad, 121 Minn. 326; Railroad v. Wagner, 166 S. W. 24; Railroad v. Simmons, 105 Va. 651; United States v. Railroad, 167 Fed. 695. Therefore, the statute by express terms, extends its protection to any and every employee of a common carrier whose duty it is, when occasion requires, to go between the ends of cars for the purpose of adjusting the pins, knuckles or any other portion of the coupling device. Section 2, Safety Appliance Act (27 Stat. L. 531, Compiled Statutes 8606) was enacted primarily for the purpose of protecting employees whose duties require them to go between cars for the purpose of coupling and uncoupling cars, and compels the common carriers to equip their cars with automatic couplers so that such employees will be relieved of this risk. Railroad v. Layton, 243 U. S. 617, 61 L. Ed. 931; Railroad v. Wiles, 240 U. S. 444, 60 L. Ed. 732; Railroad v. Conarty, 238 U. S. 243, 59 L. Ed. 1290; Railroad v. Mc-Whirter, 229 U. S. 265, 57 L. Ed. 1170. While the act requires cars to be equipped with couplers which couple automatically without the necessity of men going between the ends of the cars, the statute is not intended solely for the benefit of employees injured when between cars for the purpose of coupling or uncoupling them. The

design of the statute is broader, and its protection extends to employees of an interstate carrier engaged in the operation, and the movement of cars, even though they are not actually engaged in coupling cars at the time of the injury. Railroad v. Botschall, 444 U. S. 66, 61 L. Ed. 995; Railroad v. Layton, 243 U. S. 607, 61 L. Ed. 931.

DAVIS, C.—This suit, an action for negligence by the administratrix of deceased for his wrongful death, was instituted in the Circuit Court of Lawrence County on the 10th day of June, 1920. A trial was had, in which both plaintiff and defendant submitted evidence. At the conclusion of the whole evidence, the court indicated that it would give an instruction in the nature of a demurrer to the evidence, when plaintiff took an involuntary nonsuit, with leave to move to set the same aside. Thereupon, plaintiff filed a motion to set the nonsuit aside, which the court sustained, and defendant appeals.

The petition alleges that the deceased had undertaken to inspect and fix an automatic coupler on one of the freight cars, which was going into a train that defendant's switch crew was at that time making up. The pin of the coupler had been pushed too high during the switching operation, and as a result thereof the coupler failed to couple automatically by impact; that while the deceased was between the end of two cars, the switching crew caused a third car to be run down against the cars where the deceased was, causing them to move, and injured him.

The petition contains two assignments of negligence, the first, that defendant failed to keep and maintain the coupler and appurtenances thereto in safe condition, so that they would couple by impact without the necessity of employees going between the cars, as provided by the Safety Appliance Act of Congress; and second, that the members of the switching crew negligently shoved the cars against deceased, when they knew, or by the exer-

cise of ordinary care on their part could have known, that he was at that time engaged in inspecting and going over said train, and was between two of said cars.

The answer contained, first, a general denial; second, that deceased's injuries and death were due solely to a violation of what is known as the "blue-flag rule," which required car inspectors and repairers, when working under or about cars, to place a blue flag by day or a blue light by night, on the track, or at the end of a car, to denote that workmen are at work on or about said car; and, third, that the injuries and death of the deceased were the result of his own negligence and assumption of risk in going between the two cars, which were at that time being switched and moved in the making up of a freight train, without notice to or knowledge on the part of those in charge of the movement of said cars.

Plaintiff's reply was a general denial; an allegation that the blue-flag rule had been abrogated and abandoned by long continued and habitual non-observance by the employees, with the knowledge and consent of defendant; that deceased's death was directly caused by defendant's failure to comply with the Safety Appliance Laws of Congress, by failure to keep and maintain couplers in repair; and by specific denials that deceased was guilty of contributory negligence or that he assumed risks, and that contributory negligence and assumption of risk constitute no defense.

The railroad yards at Monnett, Missouri, the east and the west, are made up of switch tracks, which run in a general easterly and westerly direction. On the night of June 14, 1920, about 10:45 p. m., the switch crew, under the foreman, was assembling a freight train for points in Oklahoma and Texas. In furtherance of expeditious transportation, cars to the nearest points were to be placed next to the engine, and those to the more distant points to the rear of the train; and to so assemble the cars, it became convenient to place them, temporarily, on certain switch tracks. With that pur-

pose in view, three cars, to-wit: Cars C. H. & D. 46723, O. S. L. 9417 and St. L.-S. F. 31623, billed to Dallas, Texas, Beggs, Okla., and Dallas, Texas, respectively, and hereinafter known as the first, second and third car, were, in the above order, one following the other at short intervals, kicked, shunted or drifted to position on track number 10. As the first car drifted to position switchman Williams shouted to acting-foreman Wright, loud enough for deceased to have heard him if in the vicinity: "The knuckle pin is out there, Shorty; I have pulled it too high; fix it or have Wallace [a car inspector] fix it." Acting-foreman Wright, about a car-and-a-half length away, observed the lock as the car drifted by, and saw that the pin was pushed up past the knuckle, so that it would not couple automatically. As the car passed him, he grabbed and shook the lever, expecting the pin to drop in place, but it failed to do so. In about two minutes, the second car was kicked in and struck the first car. Both cars, bumping together, then drifted to a stationary position, the second car in juxtaposition with the first car. Wright could not see whether the two cars coupled or not.

Immediately thereafter, the third car was kicked in on track number 10, drifting toward the other two cars, the distance of about a car-and-a-half length. Wright heard the crash, and almost immediately thereafter he heard a switchman say, "We have killed a car man." Going to the immediate scene of the accident, he found the lantern and wrench of deceased about a car-and-a-half length from where the deceased (a car inspector and repairer) was lying between the rails, then unconscious. He died in about fifteen minutes. Just after the accident, the couplers were close together, the second knuckle pin was closed, the knuckles were shut, the cars were not coupled, and the pin was hoisted out of place. From the time the first car went by Wright until after the accident, the knuckles had not changed position. The coupler failed to couple automatically, by impact, because it was

out of its proper place. The deceased, with other car inspectors, performed light work in the yards, such as fixing brake chains, operating levers, taking off brake chains, and such as that, without the car going to the "rip" (repair) track. Neither the foreman nor any other employee had seen the deceased for an hour and a half, or did they know that he or any other car inspector or repairer was around or that he had heard Williams' call to Wright.

Relative to the inspection of the train and light repair work, it was the duty of the foreman to call, if necessary, the car inspector. The record is void of any evidence that a car inspector or repairer was called to fix the coupler. The evidence tended to show that the coupling pin, on the first car, had worn, so that when pulled too high it failed to fall in place, and the coupler refused to couple by impact. The train was in the process of being assembled, and was not ready for inspection.

Switch foreman Wright, plaintiff's witness, testified: "I had requested no car man to come and fix that [the coupler]. I had not seen a car man around any of those tracks for an hour and a half or two hours before the accident."

Plaintiff's witness, switchman Donlady, testified that if he couldn't fix the knuckle pin out of position, he would get the car repairer to do it, and anything he could not fix he would go and get them; that he never saw a car repairer adjust a knuckle, only when he called them to come out and do it. Both Wright and Donlady testified, in substance, that when a car inspector went in to inspect or repair a car, he would give the engineer a stop sign or signal, and tell him that he was working in there. The evidence tends to show that when deceased entered the employment of defendant he was given a copy of the "blue-flag rule," and receipted for it on another copy. The rule provides in part "that a blue flag by day and a blue light by night, placed on a track or at the end of a car, engine or train, denotes that workmen are at work under

or about the car, engine or train, and that employees must not work at such places unless such blue signal is so placed. ·A car, engine or train thus protected, must not be coupled to or moved, until the blue signal is removed by the person who placed it." The record is void of any evidence showing, or tending to show, that deceased complied with the above rule; or that he gave the employees of defendant in charge of the switching, notice or warning of his intentions to enter between the first and second cars, stationary in position, to fix the coupler. But the evidence further tends to show with respect to the blue-flag rule, that it had not been uniformly enforced, and that the defendant had waived its use by non-observance.

The evidence further tends to show that under a contract with the railroad company, the switchman nor yard-men were not required to perform any service except the switching of the equipment; but the evidence further tends to show that quite frequently some of the switch-men would and did adjust knuckle pins, rather than call a car man or inspector, and that when they did call an inspector or repairer to adjust a coupler it was the custom to notify the engineer or switch-crew foreman, that they had so called the car repairer to make the repair.

I. First, as to common-law negligence. The plaintiff maintains that the members of the switch crew negligently shoved the cars against the deceased when they knew, or by the exercise of ordinary care could have known, that he was, at that time, engaged in inspecting and going over the train, and was between two of said cars. The record contains neither positive, nor inferential evidence, that defendant actually knew that deceased had taken the position between the cars. Actual knowledge, however, may be imputed and charged, from surrounding facts and circumstances, so as to hold one to have known as a fact that which he could have discovered or learned by the exercise of ordinary care. [Vandeventer v. Railroad, 177 S. W. 834.]

Common-Law Negligence.

299 Mo.—14.

The facts show that defendant, in making up a train, was switching cars and assembling them on different tracks to again assemble them in a completed train on a certain track, for transportation to various points. In pursuance of the above intention, it became convenient to place the cars for the farther stations on track number 10, and in so doing, at short intervals, cars were kicked in and allowed to drift to a stationary position. The first two cars having drifted to such position, the third car was kicked in and suffered to strike the second car, with a crash it is said, thereby causing the second and first car to move and roll. The elapsed time between the drifting to position of the second and third car is estimated by the length of time it took the switchman on the second car to set the brakes, climb down, walk about sixty feet, and then suffer the third car to drift that sixty feet to the impact with the second car. We judge the intervening time to be about thirty seconds. Under ordinary circumstances it could not have been more than a minute. In the interim of thirty seconds, more or less, between the time the second car became stationary to the impact of the third car with it, the deceased entered between the first and second car to adjust, we may assume, the coupler. To this point and time, his position was not perilous. That it became so, the result subsequently proved, but without notice to the defendant, or knowledge, actual or imputed. The defendant, in making up the train, was switching and assembling cars. The record is void of evidence, either actual or anticipatory, that defendant saw or had knowledge that deceased was between the cars or in that vicinity. Neither he, nor other car inspector or repairer, was called to fix the coupler. It is true he had a lantern, but so constructed that the reflector threw rays to a certain point only, and it may have been impossible, constructed as it was, for the switch crew to have seen those rays; or having seen them, to recognize or realize that it was a car inspector's lantern. The evidence is clear that they saw neither him nor the rays of his light.

The defendant was switching cars on what may be called an active track. Deceased had been assigned to duty in the west yards. The accident occurred in the east yard, and his presence there is accounted for on the theory that he was inspecting an oil train, which, due to its length, was broken up and part of it placed in the east yards. While there was evidence tending to show that repairmen sometimes adjusted couplers, and were here and there about the yards performing duties, the fair inference, from the evidence is, that repairmen only inspected a train after notification that it had been assembled; and repaired cars or couplers, on active tracks, when called to do so, or upon notice to the defendant or its trainmen. The evidence considered, defendant had no reason to anticipate the presence of deceased between the cars. It could not reasonably be foreseen, or expected, that someone might be working there. Under these circumstances, no duty devolved on defendant to warn deceased. Defendant is clearly not guilty of common-law negligence, as charged. [Yoakum v. Lusk, 223 S. W. 53.]

II. "But," says the plaintiff, "the defendant was negligent in failing to keep and maintain the coupler and appurtenances thereto, on car C. H. & D. 46723, in safe condition, so that they would couple by impact without the necessity of employees going **Safety Appliance Act.** between the cars, as provided by the Safety Appliance Act of Congress." That is to say, defendant's liability rests upon a defective coupler.

This brings us to the inquiry as to whether deceased comes within the purview of the Safety Appliance Act. He did not go between the cars for the purpose of making a coupling. The first two cars had become stationary, so that if he had desired, he could not have coupled the car by impact. His sole purpose was to repair the coupler. It is true that the repair contemplated its future use, but the repair could not be extended to the act of coupling the cars. Deceased, therefore, did not come within the class protected by the act. As was said in Railroad v.

Conarty, 238 U. S. 243, quoting from Johnson v. Southern Pacific Co., 196 U. S. 1, l. c. 19, "the risk in coupling and uncoupling was the evil sought to be remedied;" and later on, "Nothing in either provision gives any warrant for saying that they are intended to provide a place of safety between colliding cars."

DAVID E. BLAIR, J., very aptly notes the distinction in Mansfield v. Wagner Electric Mfg. Co., 242 S. W. 400, l. c. 403, where he says: "Admit that the plaintiff's injuries were received in consequence of defendant's failure to install such hood with blower or suction fan; still the Legislature was not legislating to protect employees against the danger of particles flying into their eyes, but for an altogether different purpose; its object was not to regulate the duty of employers for all purposes, but only for one particular purpose, to-wit, to prevent inhalation of smoke, gas and dust by those employed about such wheels."

It is demonstrated that deceased was injured immediately after placing himself in a perilous position between two cars. Deceased knew, or ought to have known, and was therefore charged with knowledge, that the track was active, because defendant was switching cars thereon. He must have seen the first and second car take together a stationary position, for the second car, by a series of bumps, knocked or pushed the first car to such position. The evidence then demonstrates that he entered between the cars immediately thereafter. The surrounding facts and circumstances charge him with seeing the work in which the switching crew were engaged. That he saw the entire situation, we entertain no doubt. We may surmise that he failed to realize this situation, but this did not relieve him of the duty to warn defendant of his intention to enter between the cars.

Irrespective of the blue-flag rule, which we think defendant waived by habitual non-observance, the deceased was not relieved of the duty of warning the switching crew of his intention to enter between the cars, as defend-

ant is not charged with the duty of anticipating his presence there. Not knowing or being charged with knowledge of his presence between the cars, no negligence attached to the switching crew or the engineer; and even had they known of his presence at the time of his entry, it is not shown that the third car could have been prevented from coming into contact with the second car, because at the time of his entry between the cars, the switching crew had lost the power to control the movement of the third car. Nor does the evidence demonstrate that even though the coupler had been in perfect condition, the injury would or could have been prevented. It goes no further than to point out, that if the coupler had been in perfect condition, the deceased would not have entered between the cars and therefore his death would not have resulted. The governing rule is found in Railroad v. Conarty, 238 U. S. 243, l. c. 249:

"The principal question in the case is whether at the time he was injured the deceased was within the class of persons for whose benefit the safety appliance acts required that the car be equipped with automatic couplers and drawbars of standard height; or, putting it in another way, whether his injury was within the evil against which the provisions for such appliances are directed. It is not claimed nor could it be under the evidence, that the collision was proximately attributable to a violation of those provisions, but only that had they been complied with, it would not have resulted in an injury to the deceased." [Lang v. New York Central R. R. Co., 255 U. S. 455.]

In Railroad v. McWhirter, 229 U. S. 265, 280, the court said:

"The character of evidence necessary to prove such causation we need not point out, as it must depend on the circumstances of each case. To justify a recovery, it must be shown that the alleged negligence was the proximate cause of the damage."

The object of the deceased was the repair of the car. The proximate cause of his death was his failure to warn

the switching crew. We hold that the defective coupler was not the proximate cause of the injury and that the court erred in sustaining the motion to set aside the non-suit and granting a new trial.

The cause is reversed and remanded, with directions to the lower court to set aside the order granting a new trial, and to reinstate the original judgment of nonsuit. *Railey* and *Higbee, CC.,* concur.

PER CURIAM:—The foregoing opinion of DAVIS, C., is hereby adopted as the opinion of the court. All of the judges concur.