# OSWALD W. HOLZ v. CHICAGO, MILWAUKEE, ST. PAUL & PACIFIC RAILROAD COMPANY.[1]

March 15, 1929.

No. 27,055.

[1]Reported in 224 N. W. 241.

See note in 12 A. L. R. 701; 36 A. L. R. 918; 18 R. C. L. 830; 3 R. C. L. Supp. 856; 4 R. C. L. Supp. 1212; 5 R. C. L. Supp. 1004; 6 R. C. L. Supp. 1089; 7 R. C. L. Supp. 610.

*F. W. Root, C. O. Newcomb, A. C. Erdall* and *Webber, George & Owen,* for appellant.

*Tautges, Wilder & McDonald,* for respondent.

Olsen, C.

Appeal by defendant from an order denying its alternative motion for judgment or a new trial.

Defendant is a common carrier by railway, engaged in both interstate and intrastate transportation of passengers and freight. Plaintiff was employed as a brakeman or switchman in defendant's yards at Dubuque, Iowa. He was injured there while between two freight cars, engaged in opening by hand the coupler on one of these cars, and brings the action to recover for the personal injury sustained. He bases his action upon the federal safety appliance act and employers liability act, U. S. C. title 45, §§ 2 and 51 [45 USCA, §§ 2 and 51].

At the time of the accident the crew of which plaintiff was a member was engaged in switching operations in the Dubuque yards. The yards were used for switching operations in both interstate and intrastate commerce. In these yards are a main track, a passing track, some eight switch tracks numbered 1, 2, 4, 5, 6, 7, 8 and 9, and a lead track. The switching operations were conducted on the passing track, the lead and track No. 9. A string of more than 20 cars was standing on the passing track. Seventeen of these cars were pulled out from this track and were being distributed onto track No. 9 and the lead and passing tracks. Coal cars destined for Green Island, Iowa, were being taken out of the string and placed on track No. 9 for a train soon to leave for that place. Other cars in the string were being kicked back onto the passing track, except one which was shunted down the lead track. The cars were being kicked in on the different tracks without anyone on the cars to control them and without any notice or warning to the field man. They moved in until they came to rest or were stopped by coming up against cars already standing on the different tracks. That was the customary way of switching in this yard, and plaintiff was familiar with the custom and the work being done. He was what is called the field man of the crew. It was his duty, as testified by the foreman, to go around on the different tracks being used to see that the joints were made and that the coupler knuckles were open,

to see that the cars went into the clear, and to stop them and give signals and throw switches if wanted. The other switchman in the crew generally opened and closed the switches and followed the engine. The foreman gave directions and signals and sometimes made the cuts when cars were to be separated.

The accident happened shortly before midnight. Plaintiff testified that it was his duty to walk along the strings of cars to see that the cars were coupled together and the draw bars lined up, and that he was so engaged; that it was his duty to open the knuckles of the couplers so that the cars would couple on impact; that they were breaking up the string of cars on the passing track and making up a train on that track to go to Savannah, Illinois, these cars to be picked up later by a train to go to that place. He testified that two cars were kicked in on the passing track; that he heard them moving down the track, went down to examine them, and found them standing uncoupled some two to three feet apart; that he found the couplers between them closed; that he tried to open the coupler on one of these cars by using the lever extending to the outside; that the lever would not lift the pin or open the coupler; that he then went between the cars to open the coupler on one of the cars by hand, and that while so doing another car or cars kicked in on the track by the engine came and collided with the car on which he was working and bumped it up against the next car so that his hand was caught and crushed; that he did not hear or know of the car or cars being so kicked in and received no signal or notice thereof. The cars between which he was working were billed to Savannah, Illinois. The foreman of the crew knew that plaintiff was out in the yard but did not know at what place or what he was doing.

■ It is plaintiff's claim that he was at the time engaged in interstate commerce; that the coupler device was defective in that the coupler could not be opened by use of the lever, and that it was necessary for him to go between the cars to open the coupler by hand; that the safety appliance act and employers liability act apply and entitle him to recover.

It is contended by defendant that the collision of cars, the kicking of the cars down the track so that they collided with the car on which plaintiff was working, and not the condition of the coupler, was the proximate cause of the accident and that the collision was an independent and unintended happening.

The collision can hardly be said to have been unintended. The natural and probable result of kicking the cars down the track toward cars standing thereon a short distance away would be just such a collision, and the persons so moving the cars must be held to have intended the natural and probable consequences of their acts.

If at the time of the accident the plaintiff was engaged in the performance of his regular duties as servant of the defendant and both parties were engaged in interstate commerce in these switching operations, then under the facts shown the condition of the coupler might well be held a proximate cause of the accident. The primary purpose of the safety appliance act, as to couplers, is to protect employes from the peril of having to go between cars to couple or uncouple them; but, as held in the case of L. & N. R. Co. v. Layton, 243 U. S. 617, 37 S. Ct. 456, 61 L. ed. 931, the act has a broader application and makes carriers liable regardless of the position the employe may have been in or the work he may have been doing at the time if the carrier's failure to comply with the act is the proximate cause of injury to the employe while engaged in the discharge of his duty in an interstate operation. Burho v. M. & St. L. R. Co. 121 Minn. 326, 141 N. W. 300; Ahrens v. C. M. & St. P. Ry. Co. 121 Minn. 335, 141 N. W. 297; Hurley v. I. C. R. Co. 133 Minn. 101, 157 N. W. 1005; Goneau v. M. St. P. & S. S. M. Ry. Co. 154 Minn. 1, 191 N. W. 279; Id. 269 U. S. 406, 46 S. Ct. 129, 70 L. ed. 335; Bohm v. C. M. & St. P. Ry. Co. 161 Minn. 74, 200 N. W. 804; Davis v. Wolfe, 263 U. S. 239, 44 S. Ct. 64, 68 L. ed. 284; M. & St. L. R. Co. v. Gotschall, 244 U. S. 66, 37 S. Ct. 598, 61 L. ed. 995; C. G. W. R. Co. v. Schendel, 267 U. S. 287, 45 S. Ct. 303, 69 L. ed. 614.

■ Under plaintiff's theory and evidence, he was engaged in interstate commerce. His testimony is to the effect that the two cars had been set out on this track, billed to a point in another

state, and were to be coupled up to go into a train destined for that point, and that the switching crew was engaged in the work of making up such train, or a part thereof.

If at the time of his injury the employe was engaged in interstate transportation, or in work so closely related to it as to be practically a part of such transportation, then he comes within the act. Hurley v. I. C. R. Co. 133 Minn. 101, 157 N. W. 1005; Witort v. C. & N. W. Ry. Co. 170 Minn. 482, 212 N. W. 944; Johnson v. S. P. Co. 196 U. S. 1, 25 S. Ct. 158, 49 L. ed. 363; Southern Ry. Co. v. U. S. 222 U. S. 20, 32 S. Ct. 2, 56 L. ed. 72; Pedersen v. D. L. & W. R. Co. 229 U. S. 146, 33 S. Ct. 648, 57 L. ed. 1125; N. C. R. Co. v. Zachary, 232 U. S. 248, 34 S. Ct. 305, 58 L. ed. 591; U. S. v. Erie R. Co. 237 U. S. 402, 35 S. Ct. 621, 59 L. ed. 1019; N. Y. C. & H. R. R. Co. v. Carr, 238 U. S. 260, 35 S. Ct. 780, 59 L. ed. 1298; G. N. Ry. Co. v. Otos, 239 U. S. 349, 36 S. Ct. 124, 60 L. ed. 322; Seaboard A. L. Ry. v. Koennecke, 239 U. S. 352, 36 S. Ct. 126, 60 L. ed. 324; Shanks v. D. L. & W. R. Co. 239 U. S. 556, 36 S. Ct. 188, 60 L. ed. 436, L. R. A. 1916C, 797; T. & P. Ry. Co. v. Rigsby, 241 U. S. 33, 36 S. Ct. 482, 60 L. ed. 874; P. & R. Ry. Co. v. Polk, 256 U. S. 332, 41 S. Ct. 518, 65 L. ed. 958; B. & O. S. W. R. Co. v. Burtch, 263 U. S. 540, 44 S. Ct. 165, 68 L. ed. 433.

Other cases cited by defendant on the question of proximate cause and interstate commerce, such as A. T. & S. F. Ry. Co. v. Calhoun, 213 U. S. 1, 29 S. Ct. 321, 53 L. ed. 671; St. L. I. M. & S. Ry. Co. v. McWhirter, 229 U. S. 265, 33 S. Ct. 858, 57 L. ed. 1179; G. T. W. Ry. Co. v. Lindsay, 233 U. S. 42, 34 S. Ct. 581, 58 L. ed. 838; St. L. & S. F. R. Co. v. Conarty, 238 U. S. 243, 35 S. Ct. 785, 59 L. ed. 1290; Lang v. N. Y. C. R. Co. 255 U. S. 455, 41 S. Ct. 381, 65 L. ed. 729; P. & R. Ry. Co. v. Eisenhart (C. C. A.) 280 F. 271; McCalmont v. Pennsylvania R. Co. (C. C. A.) 283 F. 736; Rittenhouse v. St. L.-S. F. Ry. Co. 299 Mo. 199, 252 S. W. 945; Illinois State Tr. Co. v. M. P. R. Co. (Mo.) 5 S. W. (2d) 368, have been examined and found instructive. We shall not attempt to analyze or distinguish them. Upon the record here, we hold that the questions of proximate cause and interstate commerce were questions of fact for the jury. Burho v. M. & St. L. R. Co. 121 Minn. 326, 141 N. W. 300.

■ As to negligence, the rule is that a coupler which fails to work when an honest and reasonable effort is made to operate it does not comply with the act in question, and such failure to operate is sufficient evidence to justify the jury in finding it defective and in finding the carrier negligent. Burho v. M. & St. L. R. Co. 121 Minn. 326, 141 N. W. 300; M. & St. L. R. Co. v. Gotschall, 244 U. S. 66, 37 S. Ct. 598, 61 L. ed. 995; C. R. I. & P. Ry. Co. v. Brown, 229 U. S. 317, 33 S. Ct. 840, 57 L. ed. 1204; McDonald v. G. N. Ry. Co. 166 Minn. 87, 207 N. W. 194.

■ The questions of contributory negligence and assumption of risk, if there was a violation of the safety appliance act, are disposed of by the statement in the case of C. G. W. R. Co. v. Schendel, 267 U. S. 287, 292, 45 S. Ct. 303, 69 L. ed. 614, that the things done "amount to no more than contributory negligence or assumption of the risk, and both of these are removed from consideration by the Liability Act." (Safety appliance act.)

■ There is a second branch to this case. The trial court submitted two questions of negligence to the jury: First, whether defendant was negligent in using a car which had a defective coupler; second, whether defendant was negligent in carelessly moving other cars against the car upon which plaintiff was working without giving him proper warning. This, if established, would be a cause of action for negligence under the employers liability act as distinguished from the safety appliance act.

The switching operations in this yard were conducted in the usual and customary manner there employed. Plaintiff was familiar with the usage and custom. He knew that cars were to be and would be kicked or shunted back upon these tracks without anyone upon or controlling the cars so shunted and without notice or warning to him; that it was up to him to look out for his own safety. In that situation the defendant could not be charged with negligence because it failed to watch out for plaintiff or warn him of intended car movements, and he would be held to have assumed the risk. Tuttle v. D. G. H. & M. Ry. Co. 122 U. S. 189, 7 S. Ct. 1166, 30 L. ed. 1114; Boldt v. Pennsylvania R. Co. 245 U. S. 441, 38 S. Ct. 139,

62 L. ed. 385; C. & O. Ry. Co. v. Nixon, 271 U. S. 218, 46 S. Ct. 495, 70 L. ed. 914; T. St. L. & W. R. Co. v. Allen, 276 U. S. 165, 48 S. Ct. 215, 72 L. ed. 513; C. M. & St. P. Ry. Co. v. Voelker (C. C. A.) 129 F. 522, 70 L. R. A. 264; C. N. Ry. Co. v. Walker (C. C. A.) 172 F. 346, 24 L.R.A.(N.S.) 1020; B. & O. R. Co. v. Newell (C. C. A.) 196 F. 866; Hogan v. N. Y. C. & H. R. R. Co. (C. C. A.) 223 F. 890; U. P. R. Co. v. Marone (C. C. A.) 246 F. 916; McCann v. M. & St. L. R. Co. 159 Minn. 70, 198 N. W. 300; Stone v. C. & N. W. Ry. Co. 176 Minn. 104, 222 N. W. 641.

Plaintiff seeks to avoid the situation by his testimony that "the foreman told me there was three moves to be made. The foreman told me we were going to kick some cars down on No. 9 and on the east passing track, and down on the lead." He further testified that three switching movements had been made before the one in which he was injured. It is at least very doubtful if the statements claimed to have been made by the foreman can be construed as any assurance of safety. The statement pointed out the three tracks on which switching was to be done. Nothing was said about the number of cars to be moved or the number of cuts that would have to be made, and it would reasonably be understood that the three moves to be made referred to the three tracks. Plaintiff was under the same obligation to watch out for and observe whether the switching operations had ended as he was to look out for shunted cars. The foreman denied making any statements to plaintiff as to the number of moves to be made.

■ The court charged the jury that:

"In switching operations and in the coupling and uncoupling of cars, it is generally the duty of a railroad company to see that reasonable precautions are taken and warning given by those in charge of the movements of the cars, to avoid injuring those assisting in the work. While the company is not required to insure the absolute safety of its employes, it is answerable for negligence in conducting such operations."

This portion of the charge was excepted to by defendant. The court gave correct general definitions of negligence and assumption

of risk, but did not in any way limit the instruction quoted. In the situation here shown, the general rule as to the duty of defendant to take precautions and to warn plaintiff of car movements did not apply. Defendant could be held negligent and plaintiff not to have assumed the risk only in case the jury found that the foreman made the statements claimed and that such statements amounted to an assurance of safety such as would justify plaintiff in going between the cars without taking other precautions for his safety.

The question of assumption of risk on this branch of the case has been extensively argued. The question is treated in Seaboard A. L. Ry. v. Horton, 233 U. S. 492, 34 S. Ct. 635, 58 L. ed. 1062, L. R. A. 1915C, 1; Boldt v. Pennsylvania R. Co. 245 U. S. 441, 38 S. Ct. 139, 62 L. ed. 385; C. R. I. & P. Ry. Co. v. Ward, 252 U. S. 18, 40 S. Ct. 275, 64 L. ed. 430; Reed v. Director General, 258 U. S. 92, 42 S. Ct. 191, 66 L. ed. 480; T. St. L. & W. R. Co. v. Allen, 276 U. S. 165, 48 S. Ct. 215, 72 L. ed. 513. As gathered from these decisions, the federal employers liability act (U. S. C. title 45, § 51 [45 USCA, § 51]) abolishes the defense of assumption of risk in cases where the injury is caused by defects, due to the carrier's negligence, in its cars, machinery, etc., and also in cases where the negligence of a fellow servant, which the injured party could not have foreseen or expected, is the sole, direct and immediate cause of the injury. Applying the doctrine of these cases to the facts here, the defense of assumption of risk would not apply if the foreman was found to have given plaintiff assurances of safety and thereafter negligently permitted cars to be shunted onto the track without warning. On the other hand, as already noted, if no such assurances of safety were given, then the shunting of the cars was not negligence, and plaintiff had assumed the risk.

Under the instruction noted, the jury could find defendant negligent and avoid finding assumption of risk, because of failure to warn plaintiff, irrespective of whether the foreman made any statements to plaintiff, and irrespective of whether such statements amounted to such an assurance of safety as justified plaintiff in going between the cars without taking any precautions for his own safety. We cannot say that no prejudice resulted.

584

Deeming the evidence insufficient to sustain a verdict on this second branch of the case, and finding that there was prejudicial error in the instruction challenged, a new trial should be and is granted. Other assigned errors do not require discussion.

Order reversed.

[1]Reported in 224 N. W. 239.